JASON A. WRUBLESKI (SBN 251766)
Email: jwrubleski@schwabe.com
**SCHWABE, WILLIAMSON & WYATT, P.C.**
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

*Attorney for Non-Party*
  *Mopria Alliance Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| FLEXIWORLD TECHNOLOGIES, INC.<br><br>　　　　　Plaintiff,<br><br>v.<br><br>AMAZON.COM INC., AMAZON.COM SERVICES INC., and AMAZON WEB SERVICES INC.,<br><br>　　　　　Defendants. | Case No. 3:25-mc-80055<br><br>Lead Case No. 2:21-cv-1055-DGE<br><br>*Pending in the United States District Court for the Western District of Washington*<br><br>**NON-PARTY MOPRIA ALLIANCE INC.'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA AND UNOPPOSED REQUEST TO TRANSFER TO THE DISTRICT WHERE THE UNDERLYING ACTION IS PENDING**<br><br>Date Action filed: March 5, 2025 |

TO PLAINTIFF FLEXIWORLD TECHNOLOGIES, INC. AND ITS ATTORNEYS OF RECORD:

Pursuant to Federal Rule of Civil Procedure 45(d)(3) and N.D. Cal. Local Rule 7-1, non-Party Mopria Alliance Inc. ("Mopria"), through its undersigned counsel, serves it Notice of Motion to Quash the deposition subpoena served on it on February 19, 2025 (the "Subpoena"), by Plaintiff in the case titled *Flexiworld Technologies, Inc. v. Amazon.com Inc., Amazon.com Services Inc., and Amazon Web Services Inc.*, Case No. 2:21-cv-1055-DGE (the "Action"). Mopria also serves its Notice that it will simultaneously move, pursuant Rule 45(f), that this motion be transferred to be heard in the Western District of Washington, where the Action is pending. Neither Plaintiff nor Defendants oppose Mopria's motion to transfer.

This Notice and Motion to Quash and Unopposed Request to Transfer (the "Motion") is supported by the accompanying Memorandum of Points and Authorities in Support of Motion, the Declaration of Nika Aldrich ("Aldrich Decl."), the Declaration of Kevin Schader ("Schader Decl."), all exhibits attached thereto, and upon such other matters as may be properly presented to the Court.

The Motion is properly directed to this Court in the first instance because the Northern District of California is the "court of compliance" pursuant to Federal Rule of Civil Procedure 45(d)(3). Specifically, Mopria regularly conducts business in person at its office at 5000 Executive Parkway, Suite 302, San Ramon, California 94583, which is within 100 miles of this Court's jurisdiction. *See* Fed. R. Civ. P. 45(c)(1)(A).

Dated: March 5, 2025                                  SCHWABE, WILLIAMSON & WYATT, P.C.

                                                              By: _____
                                                              Jason A. Wrubleski (SBN 251766)
                                                              1211 SW 5th Avenue, Suite 1900
                                                              Portland, OR 97204
                                                               Telephone: 503.222.9981
                                                               Facsimile: 503.796.2900
                                                               Email: jwrubleski@schwabe.com

                                                             *Attorney for Non-Party Mopria Alliance Inc.*

-i-

**TABLE OF CONTENTS**

I.   FACTUAL BACKGROUND ................................................................................ 1

     A.   Background Concerning Mopria ............................................................. 1

     B.   History of Flexiworld's Subpoenas to Mopria and Mopria's
          Compliance .............................................................................................. 2

     C.   Flexiworld's Service of a New, Overly Broad Subpoena ....................... 5

II.  LEGAL STANDARD ....................................................................................... 6

III. ARGUMENT ..................................................................................................... 8

IV.  UNOPPOSED MOTION TO TRANSFER ..................................................... 11

V.   CONCLUSION ................................................................................................ 11

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Am. Reliable Ins. Co. v. RoundPoint Mortgage Svc. Corp.*,
  2016 WL 9108032 (D. Ariz. Nov. 15, 2016)..................................................................9

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
  300 F.R.D. 406 (C.D. Cal. 2014)..................................................................................10

*Dart Indus. Co., Inc. v. Westwood Chem. Co.*,
  649 F.2d 646 (9th Cir. 1980) ........................................................................................7

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
  34 F.3d 774 (9th Cir. 1994) ..........................................................................................7

*Fidelity Mgmt. & Rsch. Co. v. Actuate Corp*,
  275 F.R.D. 63 (D. Mass. 2023)....................................................................................12

*Flexiworld Technologies, Inc. v. Amazon.com Inc., Amazon.com Services Inc.,
  and Amazon Web Services Inc.*,
  Case No. 2:21-cv-1055-DGE................................................................................1, 6, 9, 11

*Hall v. Marriott Int'l Inc.*,
  2021 WL 3129598 (N.D. Cal. July 23, 2021)..............................................................11

*Monge v. Maya Magazines, Inc.*,
  2010 WL 2776328 (D. Nev. July 14, 2010) ..............................................................8, 9

*Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Grp., Inc.*,
  2013 WL 6446704 (D. Ida. Dec. 9, 2013) ..................................................................10

*United States v. Columbia Broad. Sys., Inc.*,
  666 F.2d 364 (9th Cir. 1982) ........................................................................................7

*Venegas v. Sw. Airlines Co.*,
  2007 WL 9776384 (W.D. Wash. Sept. 18, 2007).................................................7, 8, 10

*Willy v. Sherwin-Williams Co.*,
  2022 WL 1553703 (D. Or. May 17, 2022) ...............................................................8, 12

*Woodall v. Walt Disney Co.*,
  2023 WL 8042734 (C.D. Cal. Oct. 10, 2023)..............................................................6

**Statutes**

26 U.S.C. § 501(c)(6)..............................................................................................................1

**Other Authorities**

Fed. R. Civ. P.
    26............................................................................................................................................6
    26(b)(2)(C)..............................................................................................................................6
    30(b)(6) ............................................................................................................................ *passim*
    31........................................................................................................................................6, 12
    45(c)(1) ...................................................................................................................................6
    45(c)(1)(A) .............................................................................................................................1
    45(d)(3) ..................................................................................................................................1
    45(d)(3)(iv) ............................................................................................................................7
    45(f).................................................................................................................................1, 11

Local Rule 7-1.......................................................................................................................1

## I. FACTUAL BACKGROUND

This is a lawsuit between Flexiworld Technologies, Inc. ("Flexiworld"), a patent owner, and entities relating to Amazon.com (collectively, "Amazon"). Flexiworld alleges that Amazon infringes certain of its patents relating to network printing technology. As Mopria understands, some of those allegations concern Amazon's use of a "Mopria Print Service" app that was developed for Mopria and supplied to Amazon, which Amazon included within certain of its Fire tablets. This Motion concerns subpoenas served on Mopria by Flexiworld's counsel.

### A. Background Concerning Mopria

Mopria is an alliance formed in 2013 as a not-for-profit business league under 26 U.S.C. § 501(c)(6). (Schader Decl. ¶ 3.) As required by Section 501(c)(6), it "is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit." *Id.*

Mopria's mission is to provide universal standards and solutions for scanning and printing. (Schader Decl. ¶ 4.) Its members include many of the biggest companies in printing and scanning technologies, phone and tablet manufacturers, OS providers, mobile app developers, and the like, including Canon, Xerox, HP, Samsung, Brother, Epson, FujiFilm, Lexmark, Konica Minolta, Kyocera, Ricoh, Toshiba, Microsoft, and Adobe. (*Id.*) Its members, all of which are corporate entities, pay membership fees for the rights and privileges of membership. (*Id.* ¶ 5.) The members' delegates meet in-person once annually, and various subsets of members meet more regularly. Amazon is not and never has been a member of Mopria. (*Id.* ¶ 8.)

Mopria provides a number of services and products. As a voluntary consensus standards body under federal law (*see* OMB Circular No. A-119), Mopria's members come together in various working groups and committees to plan, develop, establish or coordinate voluntary consensus standards relating to printing and scanning. (*Id.* ¶ 9.) Mopria issues certifications for products that are compliant with its issued standards. (*Id.*) As relevant to this case, Mopria

-2-

made publicly available free apps for mobile devices that allow seamless network printing on Mopria certified printers. (*Id.* ¶ 10.)

However, as is common among 501(c)(6) trade associations, Mopria has no employees. (*Id.* ¶ 6.) Rather, it is professionally managed by an independent entity, Global Inventures, Inc. ("Inventures"), which serves a similar role for more than a dozen other trade associations, standard-setting bodies, industry alliances, and the like. (*Id.*) Kevin Schader, Vice President at Inventures, functions as Mopria's Executive Director. (*Id.*) In that role, he is responsible for providing support on administrative issues including bylaws, legal, finance, budgeting, alliance management, and operations. (*Id.*) Inventures is compensated on an hourly basis for Mr. Schader's time as Executive Director. Mr. Schader is also the Executive Director for other trade associations. (*Id.*)

Mr. Schader is not a computer programmer and does not write or understand source code. (*Id.* ¶ 13.) He did not help write Mopria's specifications or standards. (*Id.* ¶ 12.) He took no role in the development of Mopria's apps other than his administrative role. (*Id.*) Instead, source code for the Mopria apps has been maintained by an independent contractor based in Bangalore, India. (*Id.* ¶ 10.)

Mr. Schader has no control over Mopria's corporate members, the majority of which are international.[1] (*Id.* ¶ 7.) Many, if not all, of those corporations have in-house counsel. (*Id.*) A number of those corporations have been sued by Flexiworld for patent infringement in separate lawsuits, and have outside counsel that is representing or has represented them in relation to those lawsuits. (*Id.*) Beyond having no control over Mopria's corporate members, Mr. Schader also has no control over any of Mopria's members' employees. (*Id.*)

**B.     History of Flexiworld's Subpoenas to Mopria and Mopria's Compliance**

Flexiworld filed this lawsuit in June 2020. In June 2021, Flexiworld's counsel served two subpoenas on Mopria—one seeking documents and another seeking a deposition pursuant to Rule 30(b)(6). (Aldrich Decl. ¶ 3 & Exs. 2, 3.) Discovery was then stayed. In May 2024,

---

[1] There are no individual members of Mopria. (Schader Decl. ¶ 7.)

Flexiworld's counsel resent the subpoenas and advised Mopria's counsel that discovery had reopened. (Aldrich Decl. Ex. 4.) On June 7, 2024, Mopria sent objections and responses.

With respect to the subpoena for deposition testimony, Mopria advised Flexiworld in its objections and responses that it

> objects to the subpoena as unreasonable to the extent that Mopria does not have any employees. Mopria pays an independent contractor to serve as its executive director, and pays that contractor on an hourly basis. It would be unduly burdensome and not proportional to the needs of the case to require Mopria to prepare a witness to develop knowledge of any of the relevant issues to testify at a deposition concerning each of the Topics listed in the subpoena.

(Aldrich Decl. Ex. 5.) However, Mopria was "willing to meet and confer with Plaintiff about a more suitable and less burdensome method of providing discovery." (*Id.*)

Mopria and Flexiworld agreed to delay addressing the deposition subpoena until document production was complete. (Aldrich Decl. ¶ 6.)

With respect to the documents subpoena, Mopria and Flexiworld's counsel had a number of telephone calls and worked through the various requests and their objections. (*Id.*) Mopria then spent substantial time and energy complying with the document subpoena to the best of its ability. (Schader Decl. ¶¶ 14, 19.) Between July 1 and October 31, 2024, Mopria produced more than 1200 pages of documents from its files, which were collected by Mr. Schader. (*Id.*; Aldrich Decl. ¶ 7.)

Mopria also agreed to allow Flexiworld's expert to inspect the source code for the Mopria Print Service app that was provided to Amazon. (Schader Decl. ¶ 14; Aldrich Decl. ¶ 8.) On October 22 and 23, 2024, Flexiworld's expert inspected that source code at Mopria's counsel's offices and identified sixty-four (64) pages of source code to have printed and produced pursuant to the terms of the Protective Order. Mopria complied with that request, and the sixty-four pages were sent to Flexiworld's expert on October 30, 2024. (Aldrich Decl. ¶ 8.)

On November 18, 2024, Flexiworld's counsel wrote to Mopria's counsel that "there are some areas where we need testimony from the Mopria Alliance pursuant to our deposition

subpoena. I would still prefer to avoid the burden of taking a deposition and instead get what we need via a declaration." (*Id.* Ex. 6.). On November 22, 2024, Flexiworld's counsel provided a fourteen-paragraph draft declaration for Mopria to execute. (*Id.* Exs. 8 and 9 at p. 2-3.) While some of the paragraphs simply sought the authentication of certain documents and the source code that had been produced, other language went far beyond what Mopria could testify to. For example, paragraphs 7, 8, 9, 10, 11, and 13 in Flexiworld's draft declaration sought to have Mopria testify to information that is exclusively in the possession of Amazon, including identification of which specific devices Amazon loaded the app onto. Mopria cannot testify as to this information. Some paragraphs in the draft declaration sought to have Mopria testify as to facts that are not within Mopria's personal knowledge, are vague, or are simply false. For example, paragraph 8 stated:

> Amazon Fire tablets with the Mopria Print Service application pre-installed implement the Mopria Alliance Print Specification set forth in documents Bates numbered MOPRIA_000050-000354.

This request refers to a three-hundred-page specification that Mopria issued. Mopria does not have personal knowledge about whether Amazon Fire tablets "implement" all aspects of that specification.

On November 26, 2024, Mopria's counsel responded and agreed to authenticate the requested documents. (Aldrich Decl. Ex. 9.) However, Mopria's counsel explained that many of the other draft paragraphs were objectionable. Specifically,

> Several of these requests refer the Mopria Alliance Print Specification. . . . [W]ith respect to paragraphs 7, 8, 11, 12, and 13 and the broad statement that certain software or products "implement" that "Specification." What the software actually does, and whether it "implements" a particular characterization in a "specification" seems like testimony more appropriately suited for an expert than a fact witness.
>
> Additionally, I do not believe my client can testify about paragraphs 7-13 because those paragraphs require personal knowledge about Amazon's products, what was loaded onto Amazon's products, what was "pre-installed" on Amazon products, and the testimony you want seems like it should come from Amazon, not Mopria.

(*Id.*)

On December 9, 2024, Mopria's counsel and Flexiworld's counsel spoke by telephone concerning the objectionable language in the draft declaration. (*Id.* Ex. 10.) Mopria's counsel reiterated and further explained the points from the prior correspondence, and the reasons why Mr. Schader could not swear to such language under oath. On December 11, 2024, Mopria's counsel provided a signed declaration that included the information from the draft declaration Mr. Schader could swear to under oath. (*Id.* Ex. 11.) Specifically, Mr. Schader authenticated the documents and source code that had been produced in the case. (*Id.* Ex. 12.) Flexiworld's counsel did not respond, and Mopria came to believe it had fulfilled its obligation as a third-party witness in this case. (Aldrich Decl. ¶ 14.)

C. **Flexiworld's Service of a New, Overly Broad Subpoena**

Notwithstanding Mopria's prior, substantial efforts to comply with Flexiworld's subpoenas, on February 18, 2025, Flexiworld's counsel sent a new deposition subpoena with twelve overly broad deposition topics. (*Id.* Ex. 1, pp. 9-10.) Those Topics purport to demand broad testimony concerning all "functionality, capabilities, operation, and features" of Mopria's software. (*Id.* Topics 2 & 3.) Topics 4 and 5 seek testimony about "The process by which a device utilizing [Mopria's software] wirelessly prints to an available printer" including all "protocols or standards involved in that process, the processing of data by the device," how the information is "use[d]" by "the printer in that processing," data formats, "the software on the device involved in each part of that process," and all information sent or received by the device as part of that process." (*Id.* Topics 4 & 5, *see also* Topic 9.) Many Topics go far beyond the information requested in the draft declaration that Flexiworld was willing to accept in lieu of a deposition. For example, Topics 6 and 7 seek testimony concerning "The development, and reasons for development" of the Mopria software. Topics 8 and 9 seek sweeping testimony concerning "The Mopria Print Service's practice and implementation of all versions of Mopria printing standards from August 2015 through the present." Topic 10 seeks information entirely outside of Mopria's control, such as "HP's interactions with Amazon." Topic 12 is beyond

broad, seeking testimony concerning "The existence and content of all documents relating to each of the topics in this subpoena."

Flexiworld's counsel also sent a letter, which noted that Mopria had developed the app in question and that it "contributed to the Android Open Source Project." (Aldrich Decl. Ex. 13.). The letter goes on to state:

> individuals (whether employees of Mopria or not) must have technical knowledge about the design and operation of that software. Mopria therefore has the ability to designate one or more witnesses (again, whether employees of Mopria or not) to testify on its behalf as to such technical topics. In addition, Flexiworld has exhausted its efforts to attempt to obtain this information through discovery from Amazon.

(*Id.*)

The parties thereafter met and conferred. Mopria's counsel advised Flexiworld that the topics were overly broad and unduly burdensome, and, given the strictures on Mopria as a 501(c)(6) trade association, advised that a deposition pursuant to Rule 30(b)(6) was neither efficient nor practical. Mopria has only one person who qualifies as a witness under Rule 30(b)(6), that person is not competent to testify as to the broad and highly-technical topics in the subpoena. (Schader Decl. ¶¶ 15-23.) Mopria's counsel again recommended that Flexiworld serve its subpoena in the form of a deposition on written questions pursuant to Fed. R. Civ. P. 31. Flexiworld's counsel did not agree. (Aldrich Decl. ¶ 16.) This Motion follows.

## II. LEGAL STANDARD

Pursuant to Rule 26, the Court must limit discovery if it is unreasonably cumulative or duplicative; can be obtained from some other source that's more convenient, less burdensome or less expensive; or the party seeking discovery has had ample opportunity to obtain the information by discovery in the action. Fed. R. Civ. P. 26(b)(2)(C); see also *Woodall v. Walt Disney Co.*, 2023 WL 8042734, at *1 (C.D. Cal. Oct. 10, 2023) (quashing subpoenas to third party entities as overly broad and disproportionate, finding the limitations set forth in Rule 26(b)(2)(C) apply to discovery served on non-parties by subpoena).

Pursuant to Rule 45(c)(1), a party is required to "take reasonable steps to avoid imposing

undue burden or expenses on a person subject to the subpoena." The Court is required to quash a subpoena that subjects a person to "undue burden." Fed. R. Civ. P. 45(d)(3)(iv). The trial court has discretion to determine whether subjecting a non-party to a subpoena would pose an undue burden. *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). However, "[t]he Ninth Circuit has long held that nonparties subject to subpoena requests deserve extra protection from the courts." *Venegas v. Sw. Airlines Co.*, 2007 WL 9776384, at *1 (W.D. Wash. Sept. 18, 2007) (collecting authority). "While discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction may be broader when a non-party is the target of discovery." *Dart Indus. Co., Inc. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980). There are in fact "strong considerations indicating that discovery would be more limited to protect [non-]parties from harassment, inconvenience, or disclosure of confidential documents." *Id*. This is because "[n]onparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982).

For these reasons, "[c]ourts have been directed keep the distinction between a party and a nonparty in mind . . . by balancing the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." *Venegas*, 2007 WL 9776384, at *1 (collecting authority, internal quotes omitted). A party's "substantial participation during discovery," its prior "compli[ance] with [] discovery obligations imposed on it as a nonparty" may also be considered in the balancing analysis. *Id*. (quashing a further deposition subpoena seeking testimony under Rule 30(b)(6) after non-party had substantially complied with prior discovery requests).

Upon receiving a subpoena seeking deposition testimony from an association, Rule 30(b)(6) requires such an organization to designate "one or more officers, directors, or managing agents, or . . . other persons who consent to testify on its behalf." Such individual(s) must be prepared to "testify about information known or reasonably available to the organization." *Id*.

1   However, a subpoena to a corporate entity must "describe with reasonable particularity the
2   matters on which examination is requested." Courts in this Circuit require such topics to be
3   identified with "painstaking specificity." *Willy v. Sherwin-Williams Co.*, 2022 WL 1553703, at
4   *4 (D. Or. May 17, 2022) (collecting authority). For these reasons, it is well recognized that "[a]
5   [30(b)(6)] deposition is not . . . the most practical way to obtain [all types of] information." *Id.*;
6   *Venegas*, 2007 WL 9776384, at *1 (quashing a subpoena seeking a Rule 30(b)(6) deposition
7   because the information was readily available through more convenient and efficient means).
8   Where a subpoena fails to identify deposition topics pursuant to Rule 30(b)(6) with the requisite
9   level of specificity, courts routinely quash to protect the third parties. *See, e.g.*, *Monge v. Maya
10  Magazines, Inc.*, 2010 WL 2776328, at *4-5 (D. Nev. July 14, 2010).

### III.    ARGUMENT

The Court should quash the 30(b)(6) deposition subpoena to Mopria. To be clear, Mopria has only one individual who is qualified under Rule 30(b)(6) to provide testimony on Mopria's behalf—Mr. Schader, its Executive Director, who qualifies as its sole "managing agent." As a 501(c)(6) entity, Mopria has no individual officers or directors, and no other persons have consented to testify on its behalf.

In meet and confer correspondence, Flexiworld suggested that "Mopria . . . has the ability to designate one or more witnesses (again, whether employees of Mopria or not) to testify on its behalf as to such technical topics." But that is not how Rule 30(b)(6) works. Rule 30(b)(6) requires an organization to designate "one or more ***officers***, ***directors***, or ***managing agents***, or . . . other persons ***who consent to testify on its behalf***." There is nobody at Mopria other than Mr. Schader who qualifies; no other individuals have consented to testify on Mopria's behalf, and Flexiworld cannot compel Mopria through the subpoena process to do more.

However, Mr. Schader is a mere administrator who has no expertise in the Topics in the subpoena. (Schader Decl. ¶¶ 6, 15-23.) He is not a computer programmer and does not write or understand source code. (*Id.* ¶ 13.) He did not help write Mopria's specifications, protocols, or standards at issue. (*Id.* ¶ 12.) Yet, the topics largely revolve around these highly-technical

issues. For example, Topic 4 seeks corporate testimony concerning "The process by which a device utilizing the Mopria Print Service (such as an Accused Fire Tablet) wirelessly prints to an available printer, the protocols or standards involved in that process, the processing of data by the device for output to the printer, the use of any information received about the printer in that processing, the data format used for a particular print job (and the reason(s) that print format is used in a given print job), the software on the device involved in each part of that process, and all information sent or received by the device as part of that process."[2]

Mr. Schader does not have the technical expertise or abilities to testify as to computer data processing, data formats, protocols and standards, and the like, and it would require an extraordinary effort, substantially undue burden, and possibly an additional college degree for him to be prepared to testify on this or other such topics. (Schader Decl. ¶¶ 6, 13, 15-23.) Additionally, the subpoena fails to comply with the obligation to identify the topics with sufficient particularity to put Mr. Schader on notice of what he should be investigating. The unbounded breadth of the topics provides an additional basis to quash the subpoena. *See Am. Reliable Ins. Co. v. RoundPoint Mortgage Svc. Corp.*, 2016 WL 9108032, at *2 (D. Ariz. Nov. 15, 2016) (quashing deposition subpoena because the "overly-broad request violates the mandate of Rule 30(b)(6)."); *Monge*, 2010 WL 2776328, at *4-5 (same).

Moreover, many of Flexiworld's noticed deposition Topics implicate Amazon's accused devices or the printers that work with them. For example, nobody at Mopria could testify about *Amazon's* "Accused Fire Tablet[s]," all "processing of data by [those *Amazon*] device[s] for output to the printer," "the use of any information received about *the printer* in that processing," etc., all of which is required by Topics 4 and 5. Topic 10 seeks information entirely outside Mopria's custody, possession, and control, including testimony about "HP's interactions with

---

[2] Topics 2, 3, and 5 are similar. Topics 8 & 9 are unwieldy topics seeking testimony concerning Mopria's app's "implementation of all versions of Mopria printing standards from August 2015 through the present." Not even a highly knowledgeable and technically adept person could possibly cover such a vague and unbounded topic. *See Monge*, 2010 WL 2776328, at *4-5 (quashing subpoena that failed to identify topics with requisite specificity).

Amazon." The Court should not burden Mopria with producing this information, all of which should be obtained instead from Amazon, a party to the case. *Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Grp., Inc.*, 2013 WL 6446704, at *4 (D. Ida. Dec. 9, 2013) ("A court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation" (collecting authority).)

Deposing non-party Mopria on these Topics is unnecessary and would create an undue burden—Mopria's only qualified witness lacks personal and technical knowledge necessary to address these Topics. (Schader Decl. ¶¶ 6, 13, 15-23.) This is akin to compelling a homeowner to testify about the standards applicable to the utility lines running underneath their house, or a small business-owner to testify about finer details of how her accounting software or telephone systems operate. Given Mopria's trade association structure and lack of employees, combined with the overly broad deposition topics concerning the functioning of source code that Mopria did not write, it would be unduly burdensome for Mopria to have to testify in response to the subpoena.

Moreover, such testimony should be unnecessary. Mopria took the highly unusual step as a non-party of providing an inspection of its highly confidential, trade secret source code for the app that it provided to Amazon. (Schader Decl. ¶ 14; Aldrich Decl. ¶ 8.) This allowed Flexiworld to analyze how the software worked, how the software processes data, how the software uses information, etc.—in other words, the very information sought pursuant to the subpoena. Flexiworld hired an expert who spent two days at Mopria's counsel's offices reviewing that source code. Mopria then sent printouts of scores of pages from that source code to Flexiworld's expert as requested, so its expert could continue to analyze and cite that source code. (*Id.*) Thus, "[e]ven if [Mr. Schader] were somehow qualified to testify about these topics, any information [he] could likely offer would seemingly be cumulative" of information Mopria already produced in the case. *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 412 (C.D. Cal. 2014) (granting motion to quash); *Venegas*, 2007 WL 9776384, at *1 (quashing a further deposition subpoena seeking testimony under Rule 30(b)(6) after non-

party had substantially complied with prior discovery requests).

For these reasons, the Court should quash Flexiworld's subpoena directed to Mopria.

## IV. UNOPPOSED MOTION TO TRANSFER

Pursuant to Rule 45(f), "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f). This Rule protects the rights of a third-party subpoena recipient to have its voice heard in a local court where it is subject to personal jurisdiction. However, where a party not only consents to a transfer, but expressly moves that the motion be transferred, courts routinely transfer such cases to the issuing court. *See, e.g.*, *Hall v. Marriott Int'l Inc.*, 2021 WL 3129598, at *2 (N.D. Cal. July 23, 2021) (finding that the subpoena recipient's "consent to the transfer provides sufficient grounds for this Court to grant her motion to transfer").

Here, the subpoena was issued by the District Court for the Western District of Washington, where the underlying action is pending.

Mopria consents, and furthermore hereby moves, that the Court transfer this motion to the Western District of Washington. The underlying case has been assigned to Judge Estudillo who has overseen case management conferences and a *Markman* hearing, and has ruled on claim construction and numerous motions. Judge Estudillo has distinct familiarity with the facts and issues in this five year-old case involving allegations of infringement of ten (10) patents. Accordingly, both Flexiworld and Amazon have indicated they do not oppose transfer of this motion to the Western District of Washington.

## V. CONCLUSION

For the foregoing reasons, the Northern District of California should transfer the motion to quash to the District Court for the Western District of Washington .

Whichever Court hears this Motion should quash Flexiworld's deposition subpoena to Mopria.[3]

---

[3] To the extent the Court denies the motion, even in part, it should require the deposition to be

Dated this 5th day of March, 2025

Respectfully submitted,

SCHWABE, WILLIAMSON & WYATT, P.C.

By: *s/ Jason A. Wrubleski*

Jason A. Wrubleski (SBN 251766)
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503.222.9981
Facsimile: 503.796.2900
Email: jwrubleski@schwabe.com

*Attorney for Non-Party Mopria Alliance Inc.*

---

taken on written questions pursuant to Fed. R. Civ. P. 31, as Mopria repeatedly offered. "[A] [30(b)(6)] deposition is not . . . the most practical way to obtain [all types of] information." *Willy*, 2022 WL 1553703, at *4. Depositions on written questions are just as viable as oral depositions. *Fidelity Mgmt. & Rsch. Co. v. Actuate Corp*, 275 F.R.D. 63 (D. Mass. 2023). In certain circumstances, such a procedure may be "more convenient, less burdensome, and less expensive," *id.* at 65, making them particularly appropriate for a third-party deposition of a corporate entity. The procedure in Rule 31 would allow time for Mr. Schader to engage in a reasonable investigation before answering any relevant questions under oath.

-12-

Case No. 3:25-mc-80055

MOTION TO QUASH SUBPOENA AND UNOPPOSED REQUEST TO TRANSFER

# CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of March, 2025, I caused to be served the foregoing **NON-PARTY MOPRIA ALLIANCE INC.'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA AND UNOPPOSED REQUEST TO TRANSFER TO THE DISTRICT WHERE THE UNDERLYING ACTION IS PENDING** on the following parties at the following addresses:

| | |
|---|---|
| Shane P. Cramer<br>Tyler L. Farmer<br>Chelsey L. Mam<br>Bryan Cave Leighton Paisner LLP<br>999 Third Avenue, Suite 4400<br>Seattle, WA 98104<br>Email: shane.cramer@bclplaw.com<br>         tyler.farmer@bclplaw.com<br>         chelsey.mam@bclplaw.com | Michelle E. Irwin<br>Jeffrey A. Ware<br>Fenwick & West<br>401 Union Street, 5th Floor<br>Seattle, WA 98101<br>Email: mirwin@fenwick.com<br>         jware@fenwick.com |
| C. Austin Ginnings (*pro hac vice*)<br>Timothy E. Grochocinski (*pro hac vice*)<br>Nelson Bumgardner Conroy PC<br>745 McClintock Road, Suite 340<br>Burr Ridge, IL 60527<br>Email: austin@nelbum.com<br>         tim@nelbum.com<br><br>*Attorneys for Plaintiff* | J. David Hadden (*pro hac vice*)<br>Johnson K. Kuncheria (*pro hac vice*)<br>Donna Long (*pro hac vice*)<br>Ravi Ranganath (*pro hac vice*)<br>Saina S. Shamilov (*pro hac vice*)<br>Fenwick & West<br>801 California Street<br>Mountain View, CA 94041<br>Email: dhadden@fenwick.com<br>         jkuncheria@fenwick.com<br>         dlong@fenwick.com<br>         rranganath@fenwick.com<br>         sshamilov@fenwick.com |
| | Jessica Lin (*pro hac vice*)<br>Kevin X. McGann (*pro hac vice*)<br>Fenwick & West<br>902 Broadway, 18th Floor<br>New York, NY 10010<br>Email: jessica.lin@fenwick.com<br>         kmcgann@fenwick.com<br><br>*Attorneys for Defendants* |

by delivering to them a true and correct copy thereof, certified by me as such, by way of U.S. Postal Service-ordinary first-class mail and courtesy email.

*s/ Jason A. Wrubleski*
Jason A. Wrubleski

Page 1 -   CERTIFICATE OF SERVICE

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
1211 SW 5th Avenue, Suite 1900
Portland, OR 97204
Telephone: 503-222-9981

**Error! Unknown document property name.**